UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
Chicago

**FILED**

FEB 0 7 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

FEB 0 7 2008

DARRYL MOODY
PETITIONER

V.

Case No. 1: 03-CR-00 318
Judge Joan B. Gottschall

UNITED STATES OF AMERICA
RESPONDENT

08CV820
JUDGE GOTTSCHALL
MAGISTRATE JUDGE BROWN



## MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO TITLE 28 U.S.C.§ 2255

Petitioner, Darryl Moody, Sui - Juris. Now comes before this Court to humbly respectfully before this Honorable Court seeking to vacate, set aside, or correct his sentence pursuant to title 28 U.S.C.§ 2255

### FACTUAL AND PROCEDURAL STATEMENT OF CASE

On July 22, 2003 following a four-day Jury trial, Petitioner Darryl Moody was convicted of : 1.) Possession of a fire arm by a felon; 2.) Possession of a machine gun; 3.) transport of a machine gun gun; and 4.) transport of a stolen fire arm. After the Jury returned its verdict, Petitioner moved for a new trial on a number of grounds under Federal rule of Criminal Procedure 29, including that he had received ineffective assistance of counsel at trial by Attorney Gerardo Gutierrez.

On December 12, 2002, a gun store in Hattiesburg, Mississippi was burglarized. The store's front glass door had been shattered, and a surveillance video showed a person (later alleged to be the petitioner) entering though the broken door, jumping the counter, grabbing several guns off the wall and then leaving the store. The items stolen from the gun store included a Heckler and Koch Sub-machine gun model M.P-5.

On March 23, 2003 petitioner was staying at a friends apartment at 5027 S. Drexel in Chicago, having driven with two other individuals from Mississippi. One reason for petitioner

1

trip to Chicago was allegedly to sell the M.P-5 machine gun. At the suggestion of a friend, Krishanna Hinton, petitioner contacted her brother Timothy Hinton soon after his arrival in Chicago and invited him to the apartment.

When Timothy Hinton arrived at the apartment, petitioner allegedly attempted to sell him the stolen M.P-5 machine gun for $5,000. Upon Hinton departure from the apartment he contacted law enforcement authorities and told them about the petitioner attempted sale of the machine gun.

Acting on Hinton's tip and under the alleged authority of a search warrant, officers of the Illinois State Police Tactical Response Team (TRT) entered the apartment at 5027 Drexel at about 5:30 pm. on March 25, 2003. Upon search of the premises the M.-5 machine gun was recovered along with ammunition, an a estimated 55 grams of Cannabis, and a ceramic bong.

Petitioner was arrested along with two other individuals who were found in the apartment, and who had traveled from Mississippi with the petitioner. Deshawn Davis and Deshawn McBride. A fourth individual, Jeffrey Bullock who was leasee of the apartment was arrested outside.

After the Jury returned it's guilty verdict, the court, granted petitioner's oral motion (asserted by Gutierrez) to file post trial motion by August 21, 2003.

On July 31, 2003, petitioner sent a letter to the court, requesting new counsel based on his dissatisfaction with some of Gutierrez actions at trial and on Gutierrez improper interaction with his fiancée, Gabrielle Gilbert. On August 13, 2003, the court granted petitioner's request and

appointed him a fourth successive attorney, Michael Mann.

On August 20, 2003, petitioner (via Mann) filed a motion for a new trial within the schedule established by the court. In exhibit ( ) see motion.

Petitioner was ultimately found guilty and sentenced to a term of 100 months on counts 1, 2, and 4, and 60 months on count 3. said periods to run concurrent. See exhibit B judgment in criminal case. On September 26, 2006, and appeal of the conviction was entered and on October

18, 2006 judgment was affirmed by Appeals Court. See Docket entry 133 and 134 of Docket Text Report Appendix Volume 1 exhibit A

On November 13, 2007 a motion for extensions of time to file 2255 motion, see Appendix Volume 1, and 2 exhibit "A", "B", "C", "D", and "E" each Volume. Petitioner made a valid showing to the courts that equitable tolling was warranted.

## CLAIMS

Did multiple conflicts of interests by trial counsel render him ineffective.

1. Petitioner contends that trial counsel fell below the acceptable standards of effective assistance of counsel **Strickland v. Washington**, 466 U.S. 668, 687 (1984). And also that counsel acted and operated with an actual conflict and that such conflict adversely affected his loyalty and interest, See **Cuyler v. Sullivan**, 466 U.S.335,348 (1980).

The effective assistance of counsel claim is premise on the first motion that there exist an automatic conflict of interest between counsel and the petitioner. Counsel is an officer of the court, and in reality a government agent who's first duty is not to the client, but to the administration of justice, oath bound servants of society. Quite obviously, the alleged defense counsel is a government agent sitting at the "Defense" table not the "accused" counsel guaranteed by the sixth Amendment, effective assistance and conflict free representation. Right to conflict free representation derives from the sixth Amendment **Garcia v. Bunnell**, 33 F. 3d **1193 (9th Circuit)**. By the words of the courts and the American Bar Association, extreme prejudice exists, because, without a written consent (release) from both the court and the Government, a claim of representation of the accused is a major fraud.... An example of such fraud would be to with hold any information or knowledge regarding the nature and character of the court, Thus denying the criminal mandate of due process.

Counsel's failure to compel the courts or inform the client of the duty of the court with seemingly competent jurisdiction to reveal the nature and legal character of the United States District Court for the Northern District of Illinois prior to the entry of a plea. This was vitally

3

critical given the fact that the Supreme Court concluded that Congress could not confer administrative or legislative functions on Article III Courts **O'Donoghue v. United States**, **289 U.S. 516 (1933).**

The sixty - first congress, during it's third session, created the act of March 3, 1911 A.D. and section 9 of said congress stated... That the United States District Courts are Legislative territorial court, empowered under article I of the Federal Constitution, and authorized to operate under article IV under admiralty - Equity jurisdiction, thus having no authority to invoke criminal jurisdiction. Only the District Court of the United States have the true judicial power, having constitutional authority to invoke criminal jurisdiction. The fact of the matter is that the United States District Court for the District of Northern Illinois - Chicago. Subject matter jurisdiction is found under admiralty - Equity and client was never told this, as a matter of fact he was led to believe that the court had criminal subject matter jurisdiction. This clearly reveals the fraudulent conflict of interest representation being demonstrated by counsel for petitioner and the obvious ineffectiveness as a result there of. knowledge of the character of the court is extremely significant in terms of the proper application of U.S.C. § 3231 which applies to article III courts of

the United States, not the United States District Courts. From the onset the counsel knew or should have known the courts was without criminal jurisdiction. Certainly had it been for counsel's deficient and prejudicial errors, petitioner would not have been subject to want of jurisdiction by the court. As a matter of fact, there is a reasonable probability that had it not been for the counsel's conflict of interest and fraudulent representation, the results of the proceedings would have been different, because the court lacked subject matter jurisdiction pursuant to 18 U.S.C.§ 3231. This reasonable probability is sufficient enough to undermine the outcome. In the name of your FCRP, rule 52, petitioner compels this court to bring fourth written finding of fact and conclusion of law, **Francis v. Goodman**, 81 F. 3d 5, 8 (1st Cir 1996), concerning all matters raised hereto fore, and herein for Habeas Corpus purposes. In case of conflict between attorneys duty to client and that court, his duty to the court must prevail **State v. Barto**, 232

4

**N.W 553, 202 Wis. 329.** This basis for the release shown to be necessary at C.J.S. Attorney client § 105 (d). Rule 1.7 which rules continue with :[E R - 4] loyalty to a client is so impaired when a lawyer cannot consider, recommendation or carry out an appropriate course of action for the client because of the lawyers other responsibility or interest. The conflict in effect fore closes alternatives that would other wise be available to the client. Just such a conflict is pleadings which may be made. One such pleading is a propria persona. A rule in pleading that pleas to jurisdiction of the court must be made or plead in propria persona, because if pleaded by an attorney they admit the jurisdiction as an attorney is an officer of the court, and he is presumed to plead after having obtained leave, which admit the jurisdiction.

By counsel not explaining to petitioner the character and nature of the court he precluded petitioner from having the right to know the nature and cause of the accusation so mandated by the Sixth Amendment. By counsel not obtaining written consent (release) from both the court and the Government to compromise it's case, a claim of representation of the accused amounted to a major fraud by counsel.

Petitioner also contends that a second motion of ineffective assistance of counsel exist on the premise of a conflict of interest. That involved a relationship between trial counsel Gerardo S. Gutierrez and the petitioner's fiancée Gabrielle Gilbert. Via a telephone conversation with Ms.Gabrielle Gilbert by trial counsel, she was strongly advised to be present as a character witness in petitioner's trial Upon her arrival in Chicago she met with trial attorney Gerardo S. Gutierrez who after meeting her offered his "Northern Hospitality". After the first day of court, trial attorney along with Ms.Gabrielle Gilbert and two friends went out for beer and pizza. The same evening Gerardo S. Gutierrez secured a hotel room in Chicago Inn for their stay. The next day her friends had to returned to Mississippi, it was at this time that the trial attorney offered Ms.Gabrielle Gilbert lodging and provisions at his apartment for the duration of the trial. She accepted and thus an inappropriate relationship that served as the impetus of the second motion of conflict of interest.

Over the weekend trial counsel took Ms.Gabrielle Gilbert sight seeing and visiting numerous night clubs. For the duration of the trial all of trial counsel's attention was diverted with his infatuation of Ms.Gabrielle Gilbert. Very little if any preparation was made for and during trial, he spent most of his time playing host to his house guest. Trial attorney even tried to convince Ms.Gabrielle Gilbert to relocate to Chicago and offered to provide her with a plane ticket back home. When Ms.Gabrielle Gilbert inquired about trial counsel's preparation and attention to the case, he replied, "I get $20,000 for loosing this case". SEE EXHIBIT (A)

Petitioner contends that the romantic infatuation by his trial counsel and his fiancee seriously compromised his representation to his client. The duty of loyalty and interest in providing zealous representation to the accused was in fact compromised by his choice between blending and the divergent personal interest in the petitioner's fiancée, thus created a lack of professional and ethical conduct. It is without a doubt the defense suffered an adverse effect, such an effect is established by evidence that some plausible alternative defense strategy or tactic could have been pursued, but was not because an actual conflict impaired counsel's performance. Petitioner stated the following in support of the adverse effect:

A. Trial counsel failed to effectively challenge the validity of the search warrant which was riddled with inaccurate and incorrect information such a challenge could have lead to thesuppression of the evidence as well as the arrest.

B. Trial counsel failed to investigate potential witnesses for the defense and interview any government witnesses, thus blotting out the essence of any formidable defense

C. Trial counsel failed to effectively challenge the credibility of the C.I. .

D. Trial counsel failed to allow the petitioner to review evidence concerning a taped conversation between he and a ex-girlfriend who was the sister of the C.I. Also failed to challenge the improper merging of two separate conversation into one transcribed conversation by the Government.

E. Trial counsel advised petitioner not to take the stand after presenting know defense against governments evidence.

F. Trial counsel made very little if any preparation for his closing argument which virtually lessen the burden for the government to prove it's case.

G. Trial counsel infatuation with the petitioner fiancée, along with his 24-7 commitment to play host left him no time to adequately focus of the case and prepare a meaningful defense.

Petitioner contends that because of the intimate infatuation broached by trial counsel with his fiancée that trial counsel not only failed to pursue potential strategy to the defense but was compelled to avoid any meaningful attempt to get his client off with the hopes of ultimately stealing his fiancée after a conviction.

Even though a potential conflict does not count; however, sometimes courts find an appearance of impropriety, so clear that an actual conflict and an adverse effect are not required before a court is willing to reverse a conviction. See **People v. Jackson, 213 Cal,Rptr. 521 (Cal App. 1985)** (reversing conviction for an appearance of impropriety without proof of an actual conflict where defense counsel and the prosecutor were dating while they were adversaries in the defendant case.) The mere fact that trial counsel allowed the petitioner to stay in his apartment, took her sight seeing and wined and dined her off as his paralegal assistant, and finally asking her to relocate to the Chicago area after the conviction of the petitioner goes much further than a mere appearance.

The end of justice, manifest injustice doctrine along with the rules of ethics demand plenary review of this matter and a hearing to determine when the petitioner can have his conviction over turned following the unprofessional conduct and ineffective assistance of counsel he received from his trial attorney.

## Conclusion

Because of the automatic conflict of interest set out in the first motion, coupled with the conflict of interest set out in the second motion petitioner should be granted a hearing on the

7

matter. Petitioner also states that his 2255 motion should be excepted because he informed the court why it would be late and even asked for an extension of time because of institutional and governmental denial of access to his legal papers, and trial transcripts, and being hindered by no fault of his own. Petitioner acted in good faith and did inform the court and asked for an extension. Petitioner prays the court will grant his 2255 motion.

Respectfully Submitted
DARRYL MOODY #21174-424
*[signature]*
U.S.P. HAZELTON
P.O. BOX 2000
BRUCETON MILLS, WEST VIRGINIA

## Certificate of Service

I hereby certify that a copy of the foregoing motion has been served by U.S. Mail upon Patrick McGovern United States Attorney, 219 South Dearborn Chicago, Illinois.60604 This 1st. day of Feb. 2008.

 

Respectfully Submitted
DARRYL MOODY # 21174-424

_____ 2-1-08
U.S.P. HAZELTON
P.O. BOX 2000
BRUCETON MILLS, WEST VIRGINIA

STATE OF MISSISSIPPI )
) SS.
COUNTY OF FORREST )

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ] | |
| Plaintiff, ] | |
| ] | No. 03 CR 318 |
| Vs. ] | |
| ] | Hon. Joan B. Gottschall |
| DARRYL MOODY, ] | Judge Presiding |
| Defendant. ] | |

## AFFIDAVIT

Gabrielle Gilbert, being duly sworn, deposes and says that:

1. I am Gabrielle Gilbert, the fiancé of Mr. Darryl Moody. Darryl is currently at the Metropolitan Correctional Center in Chicago, IL and has been since March 26, 2003. I have given assistance however able in my close contact with representatives for the defense in U.S.A. vs. Darryl Moody.

2. Via telephone, Mr. Gerrardo Gutierez strongly advised my presence as a character witness in the trial. In our discussion he also made promise to me of "Northern Hospitality" upon my arrival and stay in Chicago.

3. The first day of Darryl's trial, the morning of Thursday, July 17, 2003, I finally met Mr. Gutierez in person. I was accompanied with Mr. Aaron Guess and Miss Adrien Jeffcoat; two friends who actually introduced Darryl and me.

4. Following court Mr. Gutierez and my friends and I all went out for beer and a pizza. That same evening Mr. Gutierez secured a hotel room in the Chicago Inn for our stay of that night.

5. Following court on Friday it was imperative for my friends return to Mississippi. With Darryl's trial lasting into the next week, considering the long distance I traveled and my insufficient funds, Mr. Gutierez generously offered me

provision of his own apartment for the duration of the trial. So, I graciously accepted his offer and did not leave as planned, so to still give witness of Darryl.

6. Over the weekend Mr. Gutierez eagerly took me to sightsee the Chicago area, including numerous bars and nightclubs. I was perturbed by the dearth of Mr. Gutierez in his provision of an absolute defense for Darryl. It was only by my own requests that he spent any time or attention with the case.

7. Saturday, ~~in~~ our visit to the Metropolitan Correctional Center, Mr. Gutierez suggested, given my help to him with the case, my accompaniment of his visit with Darryl. Upon registration a staff of the front desk notified me that Darryl Moody was not scheduled for visits on that day and to wait for Mr. Gutierez' return.

8. In his car, subject of my return to Mississippi was broached and Mr. Gutierez stated his plan to purchase me a plane ticket. I then restated my plan to reimburse him for all expense I imposed during my stay. Mr. Gutierez audaciously replied, "Don't worry about it. I get twenty thousand dollars for losing this case." I followed with the obvious question, "Wow! Well, what do you get when you win?" Mr. Gutierez answered with only a contrite expression to say winning was not even an option.

9. When accusation was brought against myself of tampering with the Prosecutor's witness (Timothy Hinton), Mr. Gutierez refused all opportunity even to elicit truth of the matter to the court. Marshalls of the Court questioned gave witness refuting the accusation and, in fact, found no action by me of that nature. The Marshalls further witnessed Timothy Hinton visciously sneering at me after his retire from the witness stand. Mr. Gutierez proceeded failing any attempt to protect my credibility or that of the testimony just given by Timothy Hinton.

10. I was never called to the witness stand before a verdict was reached. Wednesday, July 23, 2003 the Honorable Joan B. Gottshcall issued a court order allowing me a special visit with Darryl at the M.C.C. before my return to Mississippi. It was on this day I learned that from the weekend passed it was purported that I, paired with Gerrardo Gutierrez, acted in an order to circumvent security of the M.C.C.. So it was, that my adhering to counsel of Mr. Darryl Moody's lawyer, I was now banned from any more visits with my fiancé for the period of one full year.

11. Gerrardo Gutierez proved himself unprofessional not only by his extreme lack in effort and proficiency as well as possession of such a strong partying habit, but also with the numerous insolent comments he made of Darryl's character.

12. During my entire stay of Chicago, the undecorus behavior of Mr. Gutierez grew evermore unconventional with his inordinate comments on my physical appearance and even to include his proposal of my permanent relocation to Chicago.

13. My gradual awareness of these circumstances made clear the venal interest of Gerrardo Gutierez' that was obviously disparate with that best interest of Mr. Darryl Moody.

14. Friday, the morning of July 25, 2003, Mr. Gutierez purchased a plane ticket in order for my return of Mississippi that same day. I have since had no communication with Mr. Gerrardo Gutierez.

Signed this  4th  day of  Feb. , 2004.

*Gabrielle Gilbert* (signature)

Gabrielle Gilbert

*Janet M Taylor* (signature)

Notary

MISSISSIPPI STATEWIDE NOTARY PUBLIC
MY COMMISSION EXPIRES JULY 19, 2007
BONDED THRU STEGALL NOTARY SERVICE

_____

_____

Witness(es)



**U.S. Department of Justice**

Federal Bureau of Prisons

*Metropolitan Correctional Center*

*71 W. Van Buren Street*
*Chicago, IL 60605*

August 11, 2003

Gerardo Gutierrez
Attorney at Law
53 West Jackson Boulevard, Suite 1122
Chicago, IL 60604

   RE: Daryl Moody, Register No. 14504-424
     Case No. 03-CR-318

Dear Mr. Gutierrez:

  This letter concerns a recent incident involving your attempt to facilitate a visit between inmate Darryl Moody and Ms. Gabrielle Gilbert on July 19, 2003. After an investigation of this incident, I have concluded that you knowingly attempted to circumvent the security of the institution by endeavoring to obtain a visit for Ms. Gilbert under false pretenses.

  Our investigation determined that on July 19, 2003, you and Ms. Gabrielle Gilbert entered the institution at approximately 1:00 p.m. Upon entry you attempted to pass Ms. Gilbert off as your legal assistant with the specific intent to obtain a legal visit for both of you with inmate Moody in an unmonitored attorney-client visiting room. Ms. Gilbert was denied entry because the lobby officers noticed that Ms. Gilbert was not on the authorized list of approved legal assistants. Please note: all legal assistants, paralegals, and interpreters must undergo a background check prior to entry into the institution. After they clear a background check, they are placed on an authorized list.

  The lobby officers also noticed that Ms. Gilbert was on the authorized visitor's list for inmate Moody. It is our policy that friends and family members of inmates are not permitted to visit both as social visitors and legal visitors. The fact that Ms. Gilbert was on inmate Moody's visitor's list raised the suspicion of the lobby officers that your efforts were disingenuous and prompted them to report your efforts to administrative staff.

  To allow an inmate's friend or family member to visit with him or her in the private area of an attorney client room would severely undermine the security of the institution. Accordingly, an effort to facilitate such a visit is considered to be an effort to circumvent the security of the institution.

I have been informed from my staff that you are an experienced attorney who visits MCC Chicago on a regular basis. Accordingly, I believe that you are knowledgeable of our visitation regulations, and that you knowingly attempted to circumvent the security of the institution. Attorneys who visit MCC Chicago are entrusted with privileges which are not afforded to regular visitors. We expect attorneys to follow the regulations of the institution, and most important, to engage in conduct which facilitates our efforts to maintain the security of the institution.

Ms. Gilbert is also a culpable party because she knowingly attempted to pass herself off a your legal assistant. This incident has resulted in her removal from Mr. Moody's social visiting list for one year.

If you have any further questions or concerns, please contact Attorney, Vincent B. Shaw at (312) 322-0567, ext. 432.

Sincerely,

J. F. Graber
Warden

cc: The Honorable Joan B. Gottschall
AUSA Patrick McGovern
Terence F. MacCarthy, Federal Defender Program

PHONE 773/334-8600 FAX 773/728-3574
920 W. FOSTER AVE., CHICAGO, IL 60640-2611 **No. 042984**

GUEST MUST PRESENT TWO TYPES OF IDENTIFICATION AT CHECK IN

CHECK OUT TIME 12:00 NOON

PLEASE PRINT LEGIBLY. PRESS HARD. YOU ARE PREPARING 2 COPIES.

PRINT NAME: Gerardo Contreras
STREET: 53 W Jackson #1100
CITY: Chicago  STATE: IL  ZIP: 60604
AUTOMOBILE LICENSE NO.:  STATE: MS  MAKE OF CAR: KIA SUV  YR: 02
NUMBER OF PERSONS: 2  NUMBER OF DAYS: 1

CITY AND STATE TAXES ARE NOT INCLUDED IN YOUR ROOM RATE

I WILL HANDLE MY ACCOUNT BY
☒ CASH IN ADVANCE
☐ CREDIT CARD

ADVANCE PAYMT: $
DEPOSIT: $
TOTAL PAID: $ 87.00

| ROOM | GUESTS | RATE | ARRIVAL | DEPARTURE | CLERK |
|------|--------|------|---------|-----------|-------|
| 171 | 2 | 75 | 7/17 | 7/18 | F7 |

THE MANAGEMENT will not be responsible for loss of money, jewelry or valuables of any kind or damage to or loss of car and/or its contents, by fire, theft or any means whatsoever while on these premises. A safety deposit box is provided in the front office for the deposit of valuables.

X _____ SIGNATURE _____ DATE

**GUEST COPY**

---

SOUTHWEST AIRLINES — PASSENGER RECEIPT

NAME OF PASSENGER: GILBERT/GABRIELLE
FROM: CHICAGO MIDWAY
TO: JACKSON MS

FARE: $0146.98
TAX: $0014.02
TAX: $0003.00
TOTAL: $0164.00

FLIGHT: KXK
DATE OF ISSUE: 25JUL03
BASE: 8IR5T9
TO: MDW/ATO
AGENT CODE: 02 CLAUDI

526233061Z0044
0396875224
WN1900206102 4

ITINERARY: MDWJANWN1980 Y25JU
GILBERT/GABRIELLE
NOT VALID FOR TRAVEL
WN1900206102 4



Southwest Airlines Open Seating
GILBERT/GABRIELLE
PNR: 8IR5T9
JUL 25
1980 CHICAGO MIDWAY — JACKSON MS
A Ticketed SSSS
RETAIN RECEIPT FOR FLIGHT
5



